**Cheryl SWISHER, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. Civ.A. 98–1352–KHV.**

United States District Court,
D. Kansas,
Kansas City Division.

Sept. 24, 1999.

John E. Foulston, John T. Conlee, Foulston, Conlee, Schmidt & Emerson, LLP, Wichita, KS, James R. Baarda, Nels J. Ackerson, The Ackerson Group, Chtd., Washington, DC, for plaintiffs.

Marc. A. Smith, James A. Eichner, U.S. Department of Justice, Environment & Nat. Resources Div., Washington, DC, Alan L. Rupe, S. Douglas MacKay, Husch & Eppenberger, Wichita, KS, Cornish F. Hitchcock, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the court on *Plaintiff's Motion For Class Certification* (Doc. # 53) filed July 19, 1999. After careful consideration of the parties' briefs and oral argument, the Court issues this memorandum to more fully explain its ruling on September 22, 1999. For reasons set forth below, and in accordance with the court's oral ruling, plaintiff's motion is overruled.

### *Factual Background*

Plaintiff filed her amended class complaint on December 22, 1998. Plaintiff owns an interest in land in Kansas constituting part of a railroad corridor on which a railroad company had a right to operate a railroad. *See Amended Class Action Complaint* (Doc. # 7) filed December 22, 1998, ¶¶ 3–4. Pursuant to the National Trails System Act, 16 U.S.C. §§ 1241 et seq., the Interstate Commerce Commission ("ICC") or the Surface Transportation Board ("STB") issued a "Trail Use Order" to convert the corridor for trail use. *See id.* ¶ 4. The trails sometimes are referred to as nature trails and permit hiking, biking and other public recreational uses. Plaintiff alleges that the Trail Use Order deprives her of her rights to possession, control and enjoyment of her land following the termination of railroad operations on the property. *See id.* ¶ 5. Plaintiff also alleges that such deprivation constitutes a taking of property for public use without just compensation. *See id.*

Plaintiff seeks to represent a class which would include:

all persons who own an interest in land constituting part of a railroad corridor on which a railroad company had a right to operate a railroad, and which corridor is now or has been occupied or controlled for trail use by reason of Trail Use Orders issued by the Interstate Commerce Commission or the Surface Transportation Board pursuant to the national Trails Systems Act, 16 U.S.C. § 1241 et seq., and who have been damaged in the amount of $10,000 or less by being deprived of their rights to possession, control, and enjoyment of their land as a result of such Trail Use Orders or who waive claims exceeding $10,000 for such damages.

*See id.* ¶ 7. Excluded from the class are railroad companies and their successors in interest, individuals who are participating in separate lawsuits against the United States for the same interests in land, and judges and justices of any court in which the action may be adjudicated. *See id.* Plaintiff estimates that the number of class members exceeds 50,000. *See id.*

### Analysis

The determination of class certification is committed to the broad discretion of the trial court. *See Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir. 1982). In deciding whether to certify a class, the Court must perform a "rigorous analysis" of whether the proposed class satisfies the requirements of Rule 23. *General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 158 F.R.D. 681, 685 (D.Kan.1994). The Court may not inquire, however, into the merits of the underlying case. *See Anderson,* 690 F.2d at 799; *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988).

Plaintiff, as the party seeking class certification, has the burden to demonstrate "under a strict burden of proof" that the requirements of Rule 23 are clearly satisfied. *Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978). In doing so, plaintiff first must satisfy the prerequisites of Rule 23(a), that is, she must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P., Rule 23(a). After meeting these requirements, plaintiff must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b). In this case, plaintiff seeks to proceed under 23(b)(1)(A), 23(b)(1)(B) and 23(b)(3). Rule 23(b)(1)(A) requires that the Court find that the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Rule 23(b)(1)(B) requires that the Court find that individual adjudications "would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Finally, Rule 23(b)(3) requires that the Court find that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### I. Rule 23(a) Requirements

The Court need not reach the questions of numerosity, commonality and adequate representation, because plaintiff has not satisfied the typicality requirement of Rule 23(a)(3). To satisfy this requirement, plaintiff must show that she possesses the same interests and suffered the same injuries as the proposed class members. *See Falcon,* 457 U.S. at 156, 102 S.Ct. 2364; *Edgington v. R.G. Dickinson and Co.,* 139 F.R.D. 183, 189 (D.Kan.1991); *Olenhouse v. Commodity Credit Corp.,* 136 F.R.D. 672, 680 (D.Kan. 1991). This requirement does not mandate, however, that the claims of the representa-

tive plaintiffs be identical to those of the other class members. *See id.* Rather, the Court should look to whether the claims of the representative plaintiff are antagonistic to the claims of the proposed class. *See id.* "Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected." *Edgington,* 139 F.R.D. at 189 (citing 7A Wright et al., Federal Practice and Procedure § 1764, at 232–33).

▮ Without determining the merits of plaintiff's claims, the Court must determine if plaintiff's claim sufficiently resembles the claims of the purported class. *See Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (court may have to probe behind pleadings to decide certification issue). Plaintiff essentially claims that the Trail Use Order issued by the ICC or STB constitutes an unlawful taking of her property. Two appellate courts have addressed this precise issue under Vermont and Maryland law. *See Chevy Chase Land Co. v. United States,* 355 Md. 110, 733 A.2d 1055, 1059 (1999); *Preseault v. United States,* 100 F.3d 1525, 1533 (Fed.Cir.1996) (Vermont law). To determine if the government's conversion of a railroad corridor to trail use constitutes a taking, the Court must evaluate:

(1) Did the original deed or other instrument convey an interest in fee simple to the railroad or did it convey an easement to the railroad?

(2) If the railroad obtained an easement, whether the conversion to a nature trail is within the scope of the easement?

(3) If the railroad obtained an easement, did the railroad abandon the easement at any time following the original conveyance but prior to the date of the alleged taking?

(4) If plaintiff has a valid property interest and the conversion to trail use is beyond the scope of the railroad's easement, whether the government's actions constitute a taking?

(5) If the government's action constitutes a taking, what is just compensation?

*Chevy Chase,* 733 A.2d at 1059; *Preseault,* 100 F.3d at 1533; *Osprey Pacific Corp. v. United States,* 41 Fed.Cl. 150, 154 (1998).

The first three inquiries involve difficult and sometimes unsettled questions of state law, which are not easily resolved on a classwide, or on a limited sub-class, basis. *See Chevy Chase Land Co. v. United States,* 158 F.3d 574, 575–76 (Fed.Cir.1998) (certifying first three questions to Maryland Court of Appeals because questions depend upon complicated issues of state property law); *Preseault,* 100 F.3d at 1556 (dissent) (state property laws at issue are complex). To evaluate the railroad's particular property interest, the Court must review each deed or other instrument, the governing state law at the time of the original conveyance and the facts and circumstances of the transaction. The Federal Circuit has noted that this inquiry requires a close examination of turn-of-the century conveying instruments, read in light of state common law and statutes then in effect. *See id.* at 1534 (examining 1899 conveyance); *see Chevy Chase,* 733 A.2d at 1065–71 (examining 1911 conveyance). Plaintiff has not shown that her deed, Kansas state law or the circumstances of the conveyance of her land are typical of the claims of class members. Indeed, plaintiff has not even shown the *nature* of her property interest, when she acquired it or the particular actions of the railroad and government with respect to her property. Plaintiff does not address these issues in her complaint or in her briefing on class certification. Thus the Court certainly cannot conclude that plaintiff's claim is typical of the claims of potential class members.

The second determination, *i.e.* whether the conversion to a nature trail is within the scope of the easement, also depends on the language of each deed or other instrument and the governing state law. Several courts have held that a nature trail is within the intended scope of a particular railroad easement, *see Preseault,* 100 F.3d at 1542–44 (Vermont law); *Lawson v. State,* 107 Wash.2d 444, 730 P.2d 1308, 1312–13 (1986); *Schnabel v. DuPage County,* 101 Ill.App.3d 553, 57 Ill.Dec. 121, 428 N.E.2d 671, 678–79 (1981); *Pollnow v. State Dep't of Nat. Resources,* 88 Wis.2d 350, 276 N.W.2d 738, 746

(1979), while other courts have reached the opposite conclusion, *see Chevy Chase*, 733 A.2d at 1073–79; *Barney v. Burlington Northern R.R., Inc.*, 490 N.W.2d 726, 732–33 (S.D.1992), *cert. denied*, 507 U.S. 914, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993); *Washington Wildlife Preservation, Inc. v. State*, 329 N.W.2d 543, 545–46 (Minn.1983), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). If the Court certified a class in this case, it would have to resolve this issue based on the language of each easement and the property law of each state.

The third question, *i.e.* whether the railroad abandoned its easement, also depends on the governing state law and the railroad's actions with respect to each property. *See Preseault*, 100 F.3d at 1546. The Court must determine this issue based on the particular actions of the railroad following the original conveyance but prior to the date of the alleged taking. *See id.* Plaintiff has not shown, or even argued, that her allegations of railroad abandonment are typical of those of class members. At oral argument, plaintiff argued that railroad abandonment is not at issue in this case because the federal government has determined that converting a railroad corridor to a trail does not constitute an abandonment by the railroad. Contrary to plaintiff's representation, the answer to the abandonment question is not always so simple. Courts may resolve the question of abandonment under state property law differently than the question of abandonment under federal regulatory law. *See Chevy Chase*, 733 A.2d at 1087–88, 1100. Without discussing all of the possible nuances and permutations of an abandonment claim, the Court notes the complexity and potential fact-intensive nature of the inquiry based on the opinion of the *en banc* Federal Circuit in *Preseault*, 100 F.3d at 1544–49 (plurality), 1553–54 (concurrence), 1555–67 (dissent), and the opinion of the Maryland Court of Appeals in *Chevy Chase*, 733 A.2d at 1080–94 (majority), 1095–1102 (dissent). In sum, potential class members may argue that the railroad abandoned its easement under state law before the conversion of the railroad corridor to a trail. *See Preseault*, 100 F.3d at 1544–49 (railroad abandoned easement in 1975, prior to the Rails–To–Trails Act of 1982). Given

the representation of plaintiff that abandonment is not an issue in her case and the fact that abandonment has been raised in several of the leading cases discussing similar claims, the Court finds that plaintiff has not shown that her claim is typical of those of class members.

Finally, the determination of just compensation is an individualized inquiry based on the value of a specific tract of land. Courts generally calculate just compensation based on sales of comparable land within a reasonable time before the taking or the capitalization of net income approach. *See United States v. 819.98 Acres of Land*, 78 F.3d 1468, 1471 (10th Cir.1996). In either case, just compensation is a detailed question of fact. *See id.* Again, plaintiff has not shown that the approach for valuation of her land could be applied to the claims of class members.

As noted above, one of the purposes of the typicality requirement is to ensure that the named plaintiff adequately represents the interests of class members. Thus the typicality requirement buttresses the adequate representation requirement of Rule 23(a)(4). *See* 7A Wright et al., *Federal Practice and Procedure* § 1764, at 232. Based on the record, the Court questions whether plaintiff has any interest in prosecuting cases with different conveyance language, different governing state laws and different factual bases to establish the railroad's abandonment.

For all of these reasons, the Court finds that plaintiff has failed to satisfy the typicality requirement of Rule 23(a)(3).

## II.  Rule 23(b) Requirements

██  In addition, plaintiff has failed to satisfy the requirements of Rule 23(b). Plaintiff claims that she has met the requirements of Rule 23(b)(1)(A), 23(b)(1)(B) and 23(b)(3). Plaintiff first argues that the pursuit of individual claims against the government presents the threat of inconsistent adjudications. The Supreme Court has recognized that Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike" such as "a utility acting towards customers [or] a government imposing a tax." *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiff contends that if the action is not maintained as a class action, district courts likely will reach inconsistent or varying adjudications on a number of issues of law and fact common to all class members. As discussed above, apart from the overarching legal and factual inquiries, plaintiff has not established issues common to the entire class. The Court must determine each claim based on (1) the particular conveyance instrument and the facts surrounding the transaction, (2) the governing state law at the time of conveyance, (3) the railroad's precise acts of alleged abandonment, and (4) the value of a particular tract of land. Accordingly, the Court finds that individual actions do not create a risk of "inconsistent adjudications" and that individual actions will not establish incompatible standards of conduct for the government. For these reasons, the Court finds that plaintiff has not satisfied the requirements of Rule 23(b)(1)(A).

Next, plaintiff argues that individual adjudications "would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). The Supreme Court noted that classic examples of such actions include actions by shareholders to declare a dividend or otherwise to declare their rights and actions charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class" of beneficiaries, requiring an accounting or similar procedure "to restore the subject of the trust." *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, ——— ———, 119 S.Ct. 2295, 2308–09, 144 L.Ed.2d 715 (1999) (quoting Advisory Committee's Notes on Fed.R.Civ.P. 23). Under each of these categories of cases, "the *shared character of rights* claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 2309. Here, plaintiff has not shown any shared rights with other landowners throughout the country or that the amount of recovery for all plaintiffs is limited. Moreover, plaintiff has not responded to

defendant's arguments on this issue in her reply brief. The Court finds that plaintiff has failed to satisfy the requirements of Rule 23(b)(1)(B).

For the reasons stated above with respect to the typicality requirement, the Court also finds that plaintiff has not shown that "questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," as required by Rule 23(b)(3). In particular, the Court finds that such an action would be extremely difficult to manage because of the complex and individualized nature of the takings' inquiry.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion For Class Certification* (Doc. # 53) filed July 19, 1999, be and hereby is **OVERRULED.**